UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:26-CR- 00172 (J. WILSON) |
| v. | : | |
| WILLIAM D. BRENNER, Defendant. | : | (Electronically Filed) |

### INDICTMENT

### THE GRAND JURY CHARGES:

**FILED**
HARRISBURG, PA

AUG 05 2026

PER___JBR___
DEPUTY CLERK

#### COUNTS 1 THROUGH 2
18 U.S.C. § 1343
(WIRE FRAUD)

### INTRODUCTION

At times material to this Indictment:

1. Defendant WILLIAM D. BRENNER was a resident of Dover, Pennsylvania, in the Middle District of Pennsylvania.

2. VICTIM 1 was born in or around 1936 and was a resident of Boiling Springs, Pennsylvania, in the Middle District of Pennsylvania. VICTIM 1 and WILLIAM D. BRENNER had known one another since WILLIAM D. BRENNER was a child. VICTIM 1 passed away in or around December 2023.

3. POWER OF ATTORNEY was VICTIM 1's daughter and

financial power of attorney. POWER OF ATTORNEY and WILLIAM D. BRENNER were also acquaintances.

4. In or around the middle of 2021, VICTIM 1 had over $800,000 in an investment account with Wilmington Trust, which offered wealth management services, maintained its headquarters in or around Wilmington, Delaware, and was a subsidiary of M&T Bank.

5. In or around the middle of 2021, VICTIM 1 had approximately $250,000 in an account with F&M Trust, which was located in or around Chambersburg, Pennsylvania, in the Middle District of Pennsylvania.

6. Old Oak Boarding & Training Center was a company located at the home address of WILLIAM D. BRENNER that offered horse boarding and horseback riding. WILLIAM D. BRENNER had signature authority over a bank account in the name of this company.

7. BP Property Maintenance was a company located at the home address of WILLIAM D. BRENNER. WILLIAM D. BRENNER had signature authority over a bank account in the name of this company.

## STATUTORY ALLEGATION

8. Beginning in or around the middle of 2021 and continuing until in or around 2022, in the Middle District of Pennsylvania, and elsewhere, the defendant,

## WILLIAM D. BRENNER

with the intent to defraud, did devise and willfully participate in, with knowledge of its fraudulent nature, a scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the above-described scheme and artifice to defraud and deprive, did knowingly transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writing, sign, signal, picture and sound.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

The following were part of the scheme and artifice to defraud:

9. WILLIAM D. BRENNER devised a scheme to obtain over $1 million in funds from VICTIM 1 so that he could, without VICTIM 1's lawful authorization, use the funds to purchase a commercial property

in his own name.

10. WILLIAM D. BRENNER persuaded VICTIM 1 and POWER OF ATTORNEY to liquidate the funds that VICTIM 1 had saved in accounts at Wilmington Trust and F&M Trust by telling them that he could offer them a better investment opportunity.

11. WILLIAM D. BRENNER led VICTIM 1 and POWER OF ATTORNEY to believe that the funds would be placed in an "investment account" managed by WILLIAM D. BRENNER himself. WILLIAM D. BRENNER promised to pay VICTIM 1 annual interest in the amount of $38,000, for two years, with installment payments to be made in increments of $19,000 on or about January 31, 2022, August 31, 2022, January 31, 2023, and August 31, 2023.

12. WILLIAM D. BRENNER led VICTIM 1 and POWER OF ATTORNEY to believe that VICTIM 1's funds would be used as collateral for WILLIAM D. BRENNER's purchase of a commercial hunting property; however, WILLIAM D. BRENNER also led VICTIM 1 and POWER OF ATTORNEY to believe that the funds would not be spent and would be available to them in the event that VICTIM 1 needed access to them.

4

13. WILLIAM D. BRENNER prepared documents for VICTIM 1 and POWER OF ATTORNEY's signatures. Specifically, WILLIAM D. BRENNER provided to VICTIM 1 and POWER OF ATTORNEY separate draft letters addressed to representatives of F&M Trust and Wilmington Trust containing "a formal demand to withdraw all funds" associated with each of VICTIM 1's accounts. VICTIM 1 and POWER OF ATTORNEY signed these documents. Both demand letters were dated July 31, 2021.

14. WILLIAM D. BRENNER then caused one or both demand letters to be transmitted to F&M Trust and Wilmington Trust. WILLIAM D. BRENNER personally sent an email, with an attached demand letter, to the F&M Trust point of contact for VICTIM 1 on or about August 2, 2021, with the subject "FW: Letter for VICTIM 1."

15. At a time unknown, WILLIAM D. BRENNER used the signatures from one of the demand letters that VICTIM 1 and POWER OF ATTORNEY actually signed to fabricate a written agreement between those individuals. The fabricated agreement was dated July 28, 2021, and it contained a signature for WILLIAM D. BRENNER, along with signatures for VICTIM 1 and POWER OF ATTORNEY that

5

were either scanned or photocopied versions of their authentic signatures. The fabricated agreement stated, "The undersigned individuals have meet [*sic*] and agreed to a preliminary arrangement for a lending opportunity, to which, VICTIM 1 . . . has agreed to lender to WILLIAM D. BRENNER . . . an amount of money drawn from her two investment accounts, one being Wilmington Trust, one being F&M Trust, for the acquisition of a property located in Caneyville, Kentucky. As of June 30, these trusts show balances of $806,000 and $256,000. This purchase is under contract for $1.5 million. The undersigned will reduce to writing an actual loan agreement once proceeds from the above referenced trusts are distributed, which will include time, rate and security of the funds involved."

16. In reality, VICTIM 1 and POWER OF ATTORNEY never authorized WILLIAM D. BRENNER to use the funds belonging to VICTIM 1 for the purchase of any property, and no such agreement was ever made either verbally or in writing.

17. WILLIAM D. BRENNER persuaded VICTIM 1 and POWER OF ATTORNEY to open an account at a federal credit union located in Camp Hill, Pennsylvania ("FEDERAL CREDIT UNION") at which

6

WILLIAM D. BRENNER served as a member of the board of directors and to transfer all the funds from Wilmington Trust and F&M Trust into that account. WILLIAM D. BRENNER and VICTIM 1 opened this account, with member number ending in -0573, on or about August 9, 2021. WILLIAM D. BRENNER and VICTIM 1 were the only owners of the account.

18. As a board member of FEDERAL CREDIT UNION, WILLIAM D. BRENNER was obligated to give prior notice to the CEO and the board of directors of any situation that could give rise to a conflict of interest; to abstain from seeking, accepting, or attempting to obtain any advantage, whether financial or in kind, from any party that either constituted an illegal act or one that could be reasonably construed to present a conflict of interest, directly or indirectly, as an incentive or reward relating to a business relationship with FEDERAL CREDIT UNION; and to act in a manner that promoted the best interests of FEDERAL CREDIT UNION and to avoid conflicts of interest when making decisions and taking actions on behalf of FEDERAL CREDIT UNION.

19. WILLIAM D. BRENNER told representatives of FEDERAL

7

CREDIT UNION that he would be purchasing the commercial hunting property with the assistance of a friend but did not inform representatives of FEDERAL CREDIT UNION that he had persuaded VICTIM 1 to open the account in connection with an "investment" opportunity that he offered to VICTIM 1.

20. On or about August 10, 2021, an F&M Trust check in the approximate amount of $250,380.63 was deposited into the FEDERAL CREDIT UNION account in the names of WILLIAM D. BRENNER and VICTIM 1.

21. On or about August 12, 2021, a wire transfer in the approximate amount of $809,844.54 was sent from Wilmington Trust, which maintained an account at M&T Bank, to the FEDERAL CREDIT UNION account in the names of WILLIAM D. BRENNER and VICTIM 1.

22. On or about August 12, 2021, a wire transfer in the approximate amount of $844,275.04 was sent from the FEDERAL CREDIT UNION account in the names of WILLIAM D. BRENNER and VICTIM 1 to an account at The Cecilian Bank in or around Cecilia, Kentucky in the name of a law firm ("LAW FIRM"). The originator of

8

the wire transfer was WILLIAM D. BRENNER, and the "Originator to Beneficiary" field was listed as "Settlement for WILLIAM D. BRENNER." This wire transfer represented the settlement payment for the purchase of the commercial hunting property located in or around Caneyville, Kentucky that WILLIAM D. BRENNER had already agreed to purchase.

23.  WILLIAM D. BRENNER prepared a draft of an "Investment Agreement," dated August 21, 2021, with signature spaces for WILLIAM D. BRENNER, VICTIM 1, and POWER OF ATTORNEY. The draft agreement reflected the interest installment payments to be paid in 2022 and 2023. The draft agreement also stated, "This Investment Agreement shall be secured by a Mortgage Deed to real property located at 1371 Yeaman Road, Caneyville, KY, 42721," which was the address of the commercial hunting property located in Kentucky. Furthermore, it stated, "Personal security is also offered by WILLIAM D. BRENNER, and real property located at" the address of the home residence of WILLIAM D. BRENNER in or around Dover, Pennsylvania. The draft agreement said nothing about WILLIAM D. BRENNER using the funds belonging to VICTIM 1 to purchase the

9

commercial hunting property located in or around Caneyville, Kentucky.

24. By September 2021, WILLIAM D. BRENNER had almost entirely depleted the funds from the FEDERAL CREDIT UNION account. Starting in or around November 2021, the account began receiving pension payments that the Commonwealth of Pennsylvania paid to VICTIM 1 as a retired public employee.

25. WILLIAM D. BRENNER failed to make any interest payments to VICTIM 1 in 2022.

26. VICTIM 1 and POWER OF ATTORNEY requested funds from WILLIAM D. BRENNER in or around March 2022 for payment to a travel agency. WILLIAM D. BRENNER transferred $5,000 from an account that he controlled in the name of the commercial hunting property to his joint account with VICTIM 1 on or about March 15, 2022 so that VICTIM 1 and POWER OF ATTORNEY would not know that he had used VICTIM 1's funds.

27. On or about March 15, 2022, a bank check in the approximate amount of $13,213 was issued from the joint account belonging to WILLIAM D. BRENNER and VICTIM 1 to a travel agency, using a

combination of funds from VICTIM 1's pension payments and the $5,000 that WILLIAM D. BRENNER transferred into the joint account on or about the same date.

28. In or around August 2022, POWER OF ATTORNEY confronted WILLIAM D. BRENNER after learning that WILLIAM D. BRENNER had depleted VICTIM 1's funds.

## EXECUTION OF THE SCHEME TO DEFRAUD

29. With each transaction being a separate count, WILLIAM D. BRENNER did knowingly transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writing, sign, signal, picture and sound, as described below:

(Continued on following page)

| Count | On or About | Outgoing Bank Account | Recipient Bank Account | Wire: Approximate Amount |
|---|---|---|---|---|
| 1 | 8/12/2021 | Wilmington Trust, M&T Bank | WILLIAM D. BRENNER & VICTIM 1, FEDERAL CREDIT UNION, -0573 | $809,844.54 |
| 2 | 8/12/2021 | WILLIAM D. BRENNER & VICTIM 1, FEDERAL CREDIT UNION, -0573 | LAW FIRM, The Cecilian Bank | $844,255.04 |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 3 THROUGH 8
18 U.S.C. § 1957
(Unlawful Monetary Transactions)

30. Paragraphs 1 through 7 and 9 through 28 are incorporated here.

31. After obtaining control of over $1 million in funds from VICTIM 1, WILLIAM D. BRENNER engaged in various additional

unauthorized transactions using the funds belonging to VICTIM 1 for his own benefit and the benefit of his family members, including his wife, with whom he shared a bank account at FEDERAL CREDIT UNION.

32.    On or about the dates set forth below, in the Middle District of Pennsylvania, and elsewhere, the defendant,

**WILLIAM D. BRENNER,**

aiding and abetting other persons both known and unknown to the Grand Jury, knowingly engaged in and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange of U.S. currency and funds, such property having been derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, with each transaction set forth below a separate count:

13

| Count | On or About | Monetary Transaction & Approximate Amount Transacted |
|---|---|---|
| 3 | 8/17/2021 | Transfer of $50,000 from account of WILLIAM D. BRENNER & VICTIM 1 at FEDERAL CREDIT UNION with member number ending in -0573, to joint account of WILLIAM D. BRENNER and wife of WILLIAM D. BRENNER at FEDERAL CREDIT UNION with member number ending in -9137 |
| 4 | 8/19/2021 | Check in the amount of $46,000 from joint account of WILLIAM D. BRENNER and wife of WILLIAM D. BRENNER at FEDERAL CREDIT UNION with member number ending in -9137 to Stetler Dodge for purchase of 2021 Dodge Ram 1500 Classic |
| 5 | 9/13/2021 | Transfer of $40,000 from account of WILLIAM D. BRENNER & VICTIM 1 at FEDERAL CREDIT UNION with member number ending in -0573, to account of Old Oak Boarding & Training Center at FEDERAL CREDIT UNION with member number ending in -7540 |
| 6 | 9/13/2021 | Transfer of $40,100 from account of WILLIAM D. BRENNER & VICTIM 1 at FEDERAL CREDIT UNION with member number ending in -0573, to account of BP Property Maintenance at FEDERAL CREDIT UNION with member number ending in -9611 |

| Count | On or About | Monetary Transaction & Approximate Amount Transacted |
|---|---|---|
| 7 | 9/14/2021 | Check in the amount of $37,500 from account of Old Oak Boarding and Training Center at FEDERAL CREDIT UNION with member number ending in -7540 to Crownstone Equipment for purchase of a skid steer |
| 8 | 9/20/2021 | Bank check in the amount of $35,000 using funds from account of BP Property Maintenance at FEDERAL CREDIT UNION with member number ending in -9611 to L.A.L. for purchase of tools and motorized equipment |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

33.    The allegations contained in Counts 1 through 8 of this Indictment are incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982.

34.    Upon conviction of an offense set forth in Counts 1 through 8 of this Indictment, the defendant,

## WILLIAM D. BRENNER

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982, any property, real or personal, that constitutes, is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or that is used to commit, facilitate, or promote, or is intended to be used to commit, facilitate, or promote, the commission of the offense of which the person is convicted; or that is involved in such offenses. The property to be forfeited includes, but is not limited to, the following:

      a.     approximately $1,060,225.17 in US currency;

      b.     a property located at or about 1371 Yeaman Road, Caneyville, KY 42721, identified at Parcel Number 022-00-00-001.0C (Deed Reference Number 503-540), more fully described as:

Being a 318.170 acre tract of land in the community of Spring Lick, Grayson County, Kentucky, and more particularly described as follows:

Unless stated otherwise, any monument referred to herein as a "5/8" rebar" is a set 5/8" diameter steel

concrete reinforcing rod, eighteen inches (18") in length, with a yellow plastic cap stamped "T.W.S., LS 2373". All bearings stated herein are based on the bearing on the northwesterly line of the D.W. property from the deed.

BEGINNING at a (set) 5/8" rebar on the northerly right of way of the P & L Railroad, corner to B.B. (DB 176 PG 214 and DB 234 PG 121); Thence with said B.B. N 44 degrees 15' 00" W., 17.85' to a (found) iron pin corner to D.W. (DB 176 PG 218 and DB 198 PG 244); thence with said D.W. N 44 degrees 15' 00" W., 1836.02' to a (set) 5/8" rebar in the line of K.G., et al, (DB 249 PG 349); thence with said K.G., et al, N 60 degrees 15' 00" E., 2363.33' to a (set) 5/8" rebar; thence N 26 degrees 16' 37" W., 2070.88' to a (set) 5/8" rebar corner to R.C. (DB 185 PG 506); thence leaving said K.G., et al, with said R.C. N 62 degrees 33' 10" E., 1183.68' to a (set) 5/8" rebar corner to S.P.; thence with S.P. N 61 degrees 36' 32" E., 823.28' to a (found) pipe corner to R.C. (DB 188 PG 196); thence leaving said S.P. with said R.C. S 41 degrees 55' 36" E., 164.93' to a (set) 5/8" rebar; thence S 43 degrees 17' 33" E., 260.10' to a (set) 5/8" rebar; thence S 43 degrees 33' 12" E., 144.76' to a (set) 5/8" rebar; thence S 48 degrees 21' 15" E., 371.02' to a (set) 5/8" rebar; thence S 44 degrees 03' 33" E., 140.10' to a (set) 5/8" rebar; thence S 43 degrees 20' 14" E., 151.77' to a (set) 5/8" rebar; thence S 53 degrees 23' 52" E., 148.63' to a (set) 5/8" rebar; thence S 24 degrees 10' 14" E., 85.37' to a (set) 5/8" rebar; thence S 36 degrees 26' 34" E., 442.91' to a (set) 5/8" rebar; thence S 45 degrees 15' 28" E., 83.66' to a (set) 5/8" rebar; thence S 55 degrees 40' 23" E., 121.11' to a (set) 5/8" rebar; thence S 65 degrees 36' 58" ?., 54.60' to a (set) 5/8" rebar; thence S 76 degrees 20' 04" E., 29.97' to a (set) 5/8" rebar; thence with new lines in C.B. (DB 187 PG 089) S 07 degrees 59' 11" E., 533.21' to a (set) 5/8" rebar; thence S 61 degrees 30' 32" E., 480.56' to a (set) 5/8" rebar; thence S 18 degrees 20' 49" W., 178.35' to a (set) 5/8" rebar; thence S 17 degrees 15' 36" W., 156.67' to a (set) 5/8" rebar; thence

17

S 20 degrees 14' 26" W., 131.22' to a (set) 5/8" rebar; thence S 12 degrees 06' 26" W., 27.50 to a (set) 5/8" rebar; thence S 06 degrees 29' 12" E., 51.61' to a (set) 5/8" rebar; thence S 15 degrees 26' 16" E., 57.12' to a (set) 5/8" rebar; thence S 06 degrees 38' 15" E., 17.88' to a (set) 5/8" rebar, thence S 06 degrees 55' 15" W., 123.30' to a (set) 5/8" rebar, thence S 10 degrees 42' 06" W., 61.01' to a (set) 5/8" rebar; thence S 17 degrees 11' 27" W., 31.60' to a (set) 3/8" rebar; thence S 16 degrees 49' 24" W., 453.03' to a (set) 5/8" rebar; thence S 11 degrees 12' 32" W., 62.49' to a (set) 5/8" rebar, thence S 13 degrees 25' 32" W., 102.71' to a (set) 5/8" rebar; thence S 17 degrees 04' 10" W., 90.50' to a (set) 5/8" rebar; thence S 37 degrees 14' 19" W., 39.45' to a (set) 5/8" rebar; thence S 42 degrees 15' 10" E., 24.01' to a (set) 5/8" rebar; thence S 27 degrees 51' 28" E., 25.68' to a (set) 5/8" rebar; thence S 06 degrees 22' 29" E., 29.00 to a (set) 5/8" rebar; thence S 26 degrees 10' 26" W., 9.50' to a (set) 5/8" rebar; thence S 12 degrees 35' 37" W., 30.00' to a point in the centerline of a creek; hence with the meanders of the centerline of said creek and continuing with new lines in said C.B. S 54 degrees 50' 52" E., 39.09; thence S 50 degrees 47' 22" E., 42.77'; thence S 47 degrees 10 degrees 01" E., 87.10; thence S 40 degrees 47' 46" E., 40.58'; thence S 10 degrees 26' 11" E. 50.70' to a point in the centerline of the Old Spring Lick Road; thence leaving the centerline of said creek with the centerline of said Old Spring Lick Road and continuing with new lines in said C.B. S 86 degrees 41'15" W., 31.30'; thence S 53 degrees 49' 26" W., 35.42'; thence S 48 degrees 00' 17" W., 128.13'; thence S 44 degrees 17' 40" W., 79.66'; thence S 48 degrees 34' 01" W., 45.22; thence S 53 degrees 28' 52" W., 41.79 to a (set) 5/8" rebar; thence S 58 degrees 30' 21" W., 52.54'; thence S 65 degrees 56' 29" W., 32.28'; thence S 76 degrees 01' 24" W., 30.90'; thence S 79 degrees 07' 46" W., 40.19'; thence S 87 degrees 48' 21" W., 53.60'; thence 82 degrees 18' 06" W., 95.15'; thence N 85 degrees 38' 40" W., 42.27'; thence S 81 degrees 38' 03" W., 37.77'; thence S 72 degrees 26' 56" W., 81.11'; thence S 71 degrees 12' 02" W.,

18

70.16'; thence S 77 degrees 45' 23" W., 26.37'; thence S 89 degrees 32'14" W., 20.66'; thence N 83 degrees 05' 11" W., 43.27'; thence N 80 degrees 15' 16" W., 112.93'; thence N 82 degrees 22' 21" W., 121.28' to a (set) 5/8" rebar; thence N 85 degrees 58' 52" W., 79.22'; thence N 83 degrees 27' 32" W., 110.20'; thence N 83 degrees 03' 52" W., 77.21'; thence N 78 degrees 46' 13" W., 61.34'; thence N 76 degrees 17' 33" W., 53.18'; thence N 81 degrees 19' 06" W., 66.00'; thence N 81 degrees 17' 51" W., 33.66'; thence S 87 degrees 44'46" W., 35.01'; thence S 83 degrees 29' 46" W., 15.25'; thence S 84 degrees 33' 39" W., 16.63'; thence N 88 degrees 25' 12" W., 52.39'; thence N 89 degrees 15' 53" W., 23.22'; thence S 74 degrees 47" 42" W., 30.59'; thence S 48 degrees 19' 23" W., 27.98'; thence S 15 degrees 46' 36" W., 29.10'; thence S 03 degrees 16' 32" E., 99.21'; thence S 04 degrees 54' 50" E., 32.52' to a (set) 5/8" rebar on the northerly right of way of said P & L Railroad; thence with the northerly right of way of said P & L Railroad with a curve to the left having a radius of 2924.93' and a long chord bearing at S 65 degrees 07' 09" W., 1826.90' to the point of beginning and containing 318.170 acres (more or less) according to a physical survey by T.W.S., PLS 2373, during December 1998 per Job No. 98-380.

TRANSFERRED HEREWITH is the right of ingress and egress over a 30' right of way easement lying 15' both sides of the following described centerline;

BEGINNING at a point at the intersection of the centerline of Yeaman Road and the centerline of a 30' right of way easement; thence leaving the centerline of said Yeaman Road with the centerline of said 30' right of way easement S 14 degrees 10' 36" W., 229.98'; thence S 26 degrees 07' 11" W., 40.25' to a point in the centerline of the Old Spring Lick Road; thence with the centerline of said Old Spring Lick Road S 63 degrees 51' 54" W., 21.08; thence S 87 degrees 11' 16" W., 60.26; thence N 87 degrees 09' 19" W., 262.39' to a point at the intersection of

19

the centerline of a creek and the centerline of the Old Spring Lick Road.

35.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(1) and 982(b); Title 21, United

States Code, Section 853(p); and Title 28, United States Code, Section 2461(c).

TRUE BILL

BRIAN D. MILLER

United States Attorney

███████████████████

FOREPERSON

By:

RAVI ROMEL SHARMA
Assistant United States Attorney

Date: 8/5/2026

21